WILLIAM McAULEY *v.* JOHN MILDRUM.

Where the notice of lien under the mechanic's lien law stated that the materials were furnished in pursuance of a written contract; *Held*, that extra materials which became necessary in consequence of defects in the specifications of the written contract were covered by the notice.

A conveyance of premises by the owner and builder made before the filing of the notice of a mechanic's lien, but which, by an instrument executed subsequently to such filing, is shown to have been intended only as a mortgage, does not prevent the lien from attaching upon the equitable interest of the owner at the date of such filing.

A mechanic's lien upon a building covers only the materials and work employed on the building referred to in the notice.

Where under a single contract, the lienor had furnished materials to the owner equally for seven houses, and one of such houses had been conveyed away by the owner before the filing of the notice of lien,—*Held*, that the lien was valid as a lien upon the remaining six houses, only for their proportionate part of the whole claim (six sevenths), although some payments had been made by the owner on general account.

APPEAL by the defendant from a judgment entered on the report of a referee.

This was an action to foreclose a mechanic's lien. On the 18th of May, 1857, the defendant entered into a contract with the plaintiff that the latter should furnish the marble for seven houses then building, owned by the defendant, according to certain plans, in such quantities as should keep two derricks going; the defendant to pay, as the work proceeded, $3500—in four payments, and, when the work was completed, to give him two mortgages for $1750 each, for the balance. Under this contract, the plaintiff furnished the marble for the houses, and extra marble, beyond that required by the plans, to the value of $253.88. During the progress of the buildings, $1475 was actually paid, and notes given, which were not paid, to the amount of $1636. In the amount of $1475 was included one note for $475, which

McAuley v. Mildrum.

was paid. This note was accepted by the plaintiff, and the defendant, in consideration of his acceptance, released him from the penalty for not keeping two derricks supplied. The last load of marble was delivered on the 1st of October, and the last before that on the 21st of September.

The plaintiff having some time in September made demand for the mortgages under the contract, and not obtaining them, on the 30th of September, 1857, filed a notice of lien on all the houses, for the balance then due him, the notice stating that such amount was due " on account of marble furnished and work performed thereon to the buildings, and that such marble was furnished and work performed in pursuance of a written contract." The amount claimed in this notice of lien included the extra materials.

On the 1st of July, 1857, the defendant had made and delivered to one Livingston Livingston a deed absolute on its face, conveying all the houses and lots; but, by an instrument dated October, 1857, executed by Livingston and Mildrum, it appeared that this deed was only intended as a mortgage or security for the debts due to, and advances made by, Livingston. A decree of foreclosure and sale was obtained against one of these lots, and a conveyance of that lot was made by the defendant to Anna M. Pinckney, on the 30th of September. The defendant conveyed the other lots to one John Haley on the 10th of October, 1857. The defendant's answer also set up defects in the workmanship, the penalty for keeping one derrick idle, and denied the extra work. It also set up that the demand for the mortgages was made before the conclusion of the work.

The case was referred to a referee, who found that the materials were properly furnished under the contract, and the extra work done, as claimed by the plaintiff, at the request of the defendant; that before the notice of lien was filed, one house and lot had been equitably conveyed to Mrs. Pinckney, but that the conveyance to Livingston of the other six was merely a mortgage, and did not divest the plaintiff's claim; that one-seventh of the marble furnished was used in the construction of Mrs. Pinckney's house, and that the plaintiff was entitled to judgment against the defendant for the whole amount of his claim, and had a valid lien for that amount on six of the houses; the

McAuley v. Mildrum.

one belonging to Mrs. Pinckney being excepted; and directed the cancellation of the defendant's unpaid notes.

From this decision the defendant appealed.

*John C. Dimmick*, for the appellant.
*Edgar S. Van Winkle*, for the respondent.

By the Court.—Daly, F. J.—The lien was filed on the 30th of September, 1857. It embraced marble furnished and work performed in pursuance of a written contract entered into between the plaintiff and the defendant, and did not and could not include materials furnished or work performed after that date. The contract was given in evidence. By the terms of it, the plaintiff was to furnish the marble for the seven houses according to the plans, cut in a workmanlike manner, finished complete, ready for setting, and of quality as good as the pattern houses. After specifying the dimensions of the ashlar in and above the basement, and enumerating certain things that are to be included, such as street roof and chimney coping, sills, lintels, &c., the contract closes with a provision that it is to include all work shown in the plans, or which may be necessary to finish the houses and appurtenances according to the defendant's, Mildrum's design in building. It appeared by the answer that the last load of stone, which was the base blocks for the iron railings, was delivered at the building on the 1st of October, 1857, the day after the notice of lien was filed. We have not the plans to ascertain whether this work, the base blocks for the iron railings, was included in the contract; but it was said, and I understood it to have been conceded at the argument, that the plans were before the referee, and that this work was not embraced by them. If so, it was extra work; and as the last load before this was delivered at the building on the 4th of September, 1857, it may be concluded that all the work was performed, and all the materials furnished, embraced in the written contract to which the notice of lien referred, before the filing of the notice. There was extra work specified in the bill of particulars attached to the notice of lien, to the value of §253.88, which does not appear to have included the base blocks for the iron railings delivered on the 1st of October, 1857, and it may therefore be concluded further, that the extra work,

McAuley v. Mildrum.

which consisted of twelve extra steps, stoop ashlar, and ashlar below sill course, by which term ashlar I understand a stone facing or slab, covering brick work or rubble, was also completed before the filing of the notice of the lien. The referee allowed $5861.97 as due upon the written contract, after deducting payments, and allowing interest from the time when the payments were to be made under the contract, and the $286.56 for extra work, with interest upon it from the date of the filing of the lien. The only question that could arise in respect to this $286.56 for extra work, was, whether it was embraced in and covered by the notice of the lien; and as there was some evidence showing that this work became necessary in consequence of defects in the plans, I think that it might fairly be regarded as covered by the notice, and that the referee did right to allow it. He does not appear to have allowed for the materials furnished or work done on or after the 1st of October, which has been referred to, and there can be no objection on that head.

As to the quality of the materials, the manner in which the stone was cut, and the work done, the evidence was conflicting. There was evidence on the part of the plaintiff that it was in all respects in conformity with the contract, and the referee having found that it was, his decision upon that point is conclusive. If there was an omission or failure on the part of the plaintiff to keep two derricks constantly going, the defendant waived all claim to damages in consideration of the plaintiff's taking his note for what remained of one of the payments, which note was taken by the plaintiff and was paid.

The evidence as to the time when the demand of the mortgage was made, was that it was about the time when the plaintiff's contract for the stone work was done; some two or three weeks before the filing of the notice of the lien. The evidence left the time somewhat uncertain, but it was positive as to a demand before the filing of the notice; and the referee having found that the mortgage was duly demanded, after the written contract had been performed, and before the filing of the notice, we would not, I think, be justified in holding that he was not warranted by the evidence in so finding.

The conveyance to Livingston was in effect a mortgage given to secure certain moneys advanced by Livingston to the plain-

tiff, and did not show that the plaintiff had parted with his interest as owner before the filing of the notice.

The lien could attach only to the land and buildings owned by the plaintiff at the time of the filing of the notice, and only to the extent of the labor and materials upon the house, building, appurtenances, and land to which the lien attached. The words of the statute are, that the person performing labor, or furnishing materials, in building, altering or repairing " any house or other building," shall have a lien for the value of such labor and materials "upon such house or building, and appurtenances, and upon the lot of land upon which the same stand." I think it follows from this provision that the six houses owned by the defendant when the notice of lien was filed, could not be charged with the labor and materials that had gone to the erection of the seventh house, and which before the filing of the notice, had been, as the referee has found, equitably conveyed to Mrs. Pinckney, and was then owned by her. The lien did not, as he has found, attach to that house, nor could the lien which attached to the six houses cover any thing more than the labor and materials that had gone to their erection. I do not see upon what principle of construction we could hold, that the right of lien which was lost by the sale and transfer of that house, or rather which had not been created by the filing of the notice when that sale and transfer took place, could by the filing of the notice attach to the other six houses;—and to this extent I think the referee erred. The filing of the notice created a lien upon the other six houses for the value of the labor and materials that had gone to their erection, to the extent of the whole of the plaintiff's right, title and interest in those houses existing at the time of the filing of the notice, (*Paine* v. *Bonney*, 4 E. D. Smith, 734), but this was its limit and extent. As the labor and materials were furnished by the plaintiff under a contract made with the defendant, the plaintiff may have been entitled under § 6 of the amended Act of 1855, to a judgment for the whole amount owing to him by the defendant under the contract; and if the property still continued in the defendant, that judgment, from the time that it was docketed, would in itself be a lien upon the premises—but if, in the meanwhile, they had been transferred to another owner, they would pass in virtue of the filing

of the plaintiff's notice, subject only to a lien to the extent of the value of the work and the materials which the plaintiff had furnished towards their erection, and the judgment in this action should be to the extent to which the lien attached at the time of the filing of the notice, and the amount of it should be ascertained and specified by the judgment. The case therefore should go back to the referee, to ascertain the value of the work and materials supplied by the plaintiff in the erection of these six buildings, that the judgment in *rem* may be limited to that amount.

Judgment reversed. New trial ordered, costs to abide event.*

---

\* The ruling in this case was reaffirmed at February General Term, 1865, *McMullen v. Chester.* Present DALY, F. J., BRADY and CARDOZO, JJ.